# EXHIBIT A

1 | W. DOUGLAS EASTON, ESQ. (Bar #47721)
BRIAN W. EASTON, ESQ. (Bar #179881)
2 | TRAVIS R. EASTON, ESQ. (Bar #301848)
**EASTON & EASTON, LLP**
3 | 650 Town Center Drive, Suite 1850
Costa Mesa, CA 92626
4 | (714) 850-4590
(714) 850-1978 [FAX]
5

6 | Attorneys for Plaintiff, CHRISTINE KAY

7

8 | SUPERIOR COURT OF CALIFORNIA

9 | FOR THE COUNTY OF SAN DIEGO

10 | UNLIMITED CIVIL

11 | CHRISTINE KAY,                           ) CASE NO. 37-2017-00020876-CU-MM-CTL
                                            )
12 |         Plaintiff,                       )
                                            ) **COMPLAINT FOR DAMAGES:**
13 | vs.                                      )
                                            ) 1. **Medical Negligence**
14 | REGENTS OF THE UNIVERSITY OF             ) 2. **Products Liability – Failure to**
CALIFORNIA, UNIVERSITY OF                 )    **Warn**
15 | CALIFORNIA SAN DIEGO MEDICAL            ) 3. **Products Liability – Design**
CENTER, RICHARD TODD ALLEN, M.D.,         )    **Defect**
16 | BENJAMIN JOHN DRINKWINE, M.D.,          ) 4. **Products Negligence**
UNIVERSITY OF CALIFORNIA SAN DIEGO)        5. **Products Negligence Per Se**
17 | MEDICAL GROUP, POINT LOMA               ) 6. **Breach of Express Warranty**
CONVELESCENT HOSPITAL, NOLI CAVA, )        7. **Breach of Implied Warranty**
18 | M.D., COOK GROUP, INC., COOK            ) 8. **Consumer Fraud and Unfair**
MEDICAL INCORPORATED a/k/a COOK           )    **and Deceptive Trade Practices**
19 | MEDICAL, INC., COOK MEDICAL, LLC,       ) 9. **Punitive Damages**
COOK INCORPORATED, MEDICAL                )
20 | ENGINEERING AND DEVELOPMENT             )
INSTITUTE, INC., COOK MEDICAL             ) [AMOUNT DEMANDED EXCEEDS $25,000]
21 | TECHNOLOGIES, COOK DENMARK              )
INTERNATIONAL APS, COOK DENMARK           )
22 | HOLDING APS, COOK GROUP EUROPE          )
APS, COOK NEDERLAND BV, WILLIAM           )
23 | COOK EUROPE APS, and DOES 1 through     )
200, inclusive,                           )
24 |                                         )
         Defendants.                        )
25 | _____)

26 | Plaintiff, CHRISTINE KAY, alleges:

27 | / / /

28 | / / /

/ / /

---
1
**COMPLAINT**

**Exhibit A**
**Page 15**

## FACTS AND ALLEGATIONS COMMON
## TO ALL CAUSES OF ACTION

1. Plaintiff, CHRISTINE KAY, is a 64 year old woman living in Orange County, California, and was 58 years old when the Cook Gunter Tulip IVC Filter was placed in her.

2. Plaintiff is informed and believes and on this basis alleges that the REGENTS OF THE UNIVERSITY OF CALIFORNIA and DOES 1 through 10 (hereinafter collectively "REGENTS") were and are public entities responsible for owning, operating, managing and conducting a hospital in San Diego County under the name UNIVERSITY OF CALIFORNIA SAN DIEGO MEDICAL CENTER located at 200 West Arbor Drive, UC San Diego Health, San Diego, CA 92103.

3. Plaintiff is informed and believes and on this basis alleges that at all times mentioned herein defendants UNIVERSITY OF CALIFORNIA SAN DIEGO MEDICAL CENTER, and DOES 11 through 20 (hereinafter collectively "UCSD DEFENDANTS") were and are corporations, partnerships, joint ventures, or other business entities, owning, maintaining, supervising, managing, and operating hospitals and medical centers located at 200 West Arbor Drive, UC San Diego Health, San Diego, CA 92103 and at other places in San Diego County (hereinafter collectively "UCSD MEDICAL CENTER").

4. Plaintiff is informed and believes and on this basis alleges that defendants RICHARD TODD ALLEN, M.D., BENJAMIN JOHN DRINKWINE, M.D., and DOES 21 through 30 (hereinafter collectively "UCSD DOCTOR DEFENDANTS") were and are doctors, physicians, and/or medical providers who worked at UCSD MEDICAL CENTER and cared for plaintiff while she was a patient at UCSD MEDICAL CENTER and thereafter.

5. Plaintiff is informed and believes and on this basis alleges that UNIVERSITY OF CALIFORNIA SAN DIEGO MEDICAL GROUP and DOES 31 through 40 (hereinafter collectively "MEDICAL GROUP DEFENDANTS") were and are corporations, partnerships, joint ventures, or other business entities that employed the UCSD DOCTOR DEFENDANTS. In doing the things alleged herein, the UCSD DOCTOR DEFENDANTS were agents and employees of the MEDICAL GROUP DEFENDANTS and the REGENTS and in doing the things set forth herein were acting within the scope of their employment for the MEDICAL GROUP DEFENDANTS and the REGENTS.

2

**COMPLAINT**

6.     Plaintiff is informed and believes and on this basis alleges that the MEDICAL GROUP DEFENDANTS and the UCSD DEFENDANTS were agents and agencies of the REGENTS and in doing the things set forth herein were acting within the course and scope of that agency.

7.     Plaintiff is informed and believes and on this basis alleges that defendants POINT LOMA CONVELESCENT HOSPITAL and DOES 41 through 50 (hereinafter collectively "POINT LOMA DEFENDANTS") were and are corporations, partnerships, joint ventures, or other business entities owning, maintaining, supervising, managing and operating a hospital and skilled nursing facility located at 3202 Duke Street, San Diego, CA 92110 (hereinafter "CONVELESCENT HOSPITAL").

8.     Plaintiff is informed and believes and on this basis alleges that defendants NOLI CAVA, M.D. and DOES 51 through 60 (hereinafter collectively "CAVA DEFENDANTS") were and are doctors, physicians and/or medical providers who provided medical care to plaintiff at the CONVALESCENT HOSPITAL.

9.     Plaintiff is informed and believes and on this basis alleges that defendants DOES 61 through 70 (hereinafter collectively "UCSD NURSES") were and are nurses, therapists or other non physician medical providers who cared for plaintiff while hospitalized at UCSD MEDICAL CENTER and were employed by REGENTS and/or UCSD DEFENDANTS while caring for plaintiff and were acting within the course and scope of their employment and agency while caring for plaintiff and did some negligent act or omission to act which caused or contributed to the injuries of plaintiff in some manner not currently known to plaintiff.

10.     Plaintiff is informed and believes and on this basis alleges that defendants DOES 71 through 80 (hereinafter collectively "POINT LOMA NURSES") were and are nurses, therapists or other non physician medical providers and were employed by and agents for the POINT LOMA DEFENDANTS who cared for plaintiff while she was a patient at the CONVALESCENT HOSPITAL and were acting within the scope and course of their employment with the POINT LOMA DEFENDANTS and did some negligent act or omission to act which caused or contributed to plaintiff's injuries in some manner not currently known to plaintiff, and are therefore sued herein by such fictitious names.

3

**COMPLAINT**

1       11.    Plaintiff is informed and believes and on this basis alleges that at all times mentioned

2   herein DOES 81 through 100 were doctors, hospitals, medical groups, corporations, nurses,

3   technicians, therapists, benefit coordinators, insurance adjusters, or other persons or entities who did

4   some negligent act or omission to act which caused or contributed to the injuries of plaintiff in some

5   manner not currently known to plaintiff and are therefore sued herein by such fictitious names.

6       12.    Plaintiff is informed and believes and on this basis alleges that COOK GROUP, INC.,

7   COOK MEDICAL INCORPORATED a/k/a COOK MEDICAL, INC., COOK MEDICAL, LLC,

8   COOK INCORPORATED, MEDICAL ENGINEERING AND DEVELOPMENT INSTITUTE, INC.,

9   COOK MEDICAL TECHNOLOGIES, COOK DENMARK INTERNATIONAL APS, COOK

10   DENMARK HOLDING APS, COOK GROUP EUROPE APS, COOK NEDERLAND BV,

11   WILLIAM COOK EUROPE APS and DOES 101-200 (hereinafter collectively "COOK" and

12   sometimes "Defendants") were and are corporations, partnerships joint ventures, or other business

13   entities who designed, manufactured, distributed, sold, tested, advertised, and promoted an unsafe

14   medical devise known as the Gunter Tulip Vena Cava Filter (hereinafter sometimes referred to as the

15   "Cook IVC Filter(s)").

16       13.    The true names and capacities of the defendants sued herein as DOES 1 through 200 are

17   unknown to plaintiff, who therefore sues those defendants by their fictitious names and will amend this

18   complaint to include their true names and capacities when they are ascertained.

19       14.    Plaintiff is informed and believes and on this basis alleges that each of the fictitiously

20   named defendants is responsible in some manner for the occurrences, events and happenings referred

21   to in this complaint, and that their conduct legally caused the damages sustained by the plaintiff herein

22   alleged, either through their conduct or the conduct of their agents.

23       15.    Plaintiff is informed and believes and on this basis alleges that at all times herein

24   mentioned each of the DOE defendants was acting as the agent, servant and employee of the other

25   defendants herein and in doing the things herein alleged was acting within the course and scope of

26   such agency and employment and with the permission and consent of the other defendants.

27   ///

28   ///

16.     At the end of May 2011 or early June 2011, plaintiff was involved in a serious automobile accident in Mexico.  After she was hospitalized and stabilized in Mexico, she was transferred to UCSD MEDICAL CENTER on or about June 4, 2011 and came under the care of the REGENTS, UCSD DEFENDANTS, the UCSD DOCTOR DEFENDANTS, MEDICAL GROUP DEFENDANTS, and the UCSD NURSES.  Plaintiff remained as a patient at UCSD MEDICAL CENTER until approximately June 16, 2011 when she was transferred to the CONVALESCENT HOSPITAL and came under the care of the POINT LOMA DEFENDANTS, the CAVA DEFENDANTS, and the POINT LOMA NURSES.  She remained under their care until July 22, 2011 when she was discharged.

17.     When plaintiff arrived at UCSD MEDICAL CENTER she had a serious wrist fracture that had undergone an open reduction internal fixation surgery in Mexico.  Her untreated fractures when she arrived from Mexico included a grossly comminuted fracture of the sacrum, a right comminuted superior pubic ramus fracture, a left superior pubic ramus fracture, and a bilateral L-5 transverse process fracture.  She also had a right C-7 transverse process fracture.  On or about June 8, 2011 defendant, RICHARD TODD ALLEN, M.D. and the USCD DOCTOR DEFENDANTS performed a surgical repair on plaintiff which included lumbo-pelvic fixation with instrumentation from L-4 to pelvis and sacram.

18.     During her hospitalization at UCSD MEDICAL CENTER, plaintiff was in great pain, on heavy duty pain medication, febral, delusional, running an infection, and unable to comprehend, understand or remember things and events that were happening to her.

19.     On or about June 7, 2011 the UCSD DOCTOR DEFENDANTS determined that because of her pelvic and sacral fractures, impending surgery and subsequent immobility, plaintiff was at high risk for developing Deep Venous Thrombosis (DVT) due to anticipated prolonged recovery without ambulation.  Because she was unable to be anticoagulated due to upcoming surgeries, the UCSD DOCTOR DEFENDANTS recommended that an Inferior Vena Cava Filter (IVC) be implanted in plaintiff to trap any DVT's that might develop and move towards her lungs.

/ / /

/ / /

20.   On or about June 7, 2011 defendant, BENJAMIN JOHN DRINKWINE, M.D. and the UCSD DOCTOR DEFENDANTS placed a retrievable Cook Gunter Tulip IVC Filter in plaintiff's infrarenal inferior vena cava.  The IVC Filter placed in plaintiff was made, marketed, and sold by COOK and was called a Gunter Tulip Vena Cava Filter.  Plaintiff's IVC Filter was IGTCFS-65-JUG NO. 2536029.  The filter was inserted via a catheter placed in plaintiff's right jugular vein and lodged in plaintiff's infrarenal inferior vena cava (hereinafter "Cook IVC Filter(s)").

21.   Cook IVC Filters are designed to filter blood clots (thrombi) that travel from the lower parts of body through the venous system to the lungs and heart.  The inferior vena cava is the vein that returns blood to the lungs and heart from the lower portion of the body.  The Cook IVC Filter is designed to prevent thromboembolic events such as a pulmonary embolism by filtering out thrombi before they get to the lungs.

22.   Cook Gunter Tulip IVC Filters have numerous risks associated with them including filter embolization, vena cava perforation, fracture of the filter and embolization to lungs or heart, migration, tilting, imbedding and absorption into the vena cava wall so as to become unretrievable, and perforation of the vena cava wall.  These risks are hereinafter collectively referred to as "IVC FILTER RISKS".

23.   Because of the IVC FILTER RISKS, the Cook IVC Filters need to be removed as soon as they are no longer needed.  The longer the IVC Filter remains in place, the more difficult it is to remove and the greater the chance of a person experiencing and falling prey to one or more of the IVC FILTER RISKS, including that it may later be impossible to remove without major surgery.

24.   Because of the known IVC FILTER RISKS, the Cook Gunter Tulip Filters are designed with a hook at the end to facilitate their removal using a Cook Gunter Tulip Vena Cava Filter retrieval system.  A drawing of the Gunter Tulip IVC Filter is reproduced below:

///

///

///

///

///

6

**COMPLAINT**

Exhibit A
Page 20



25.     Recognizing the need to have plaintiff's filter removed as soon as possible, at the time of the placement of her Cook IVC Filter on June 7, 2011, defendant BENJAMIN JOHN DRINKWINE, M.D. recommended that "If the patient no longer has indication for the filter within 2 to 3 months, she should be referred back to IR (Interventional Radiology) to be evaluated for filter retrieval." Because the known IVC FILTER RISKS increased the longer the filter remained in a patient's body, the plan was for plaintiff to be told to return to Intervention Radiology within 2 to 3 months after placement of the Cook IVC Filter to have it removed as long as plaintiff was sufficiently mobile so that the risk of DVT was reduced or eliminated. In order for this plan to work, someone had to notify plaintiff that she had a Cook IVC Filter and that she needed to have it removed in 2 to 3 months when the DVT risk had subsided. Unfortunately, no one did. When plaintiff was released from care at UCSD MEDICAL CENTER on or about June 16, 2011, no one told her she had a Cook IVC Filter or that she needed to have it removed. When she was released from the CONVALESCENT HOSPITAL on or about July 22, 2011, no one told plaintiff she had a Cook IVC Filter or that she needed to have it removed. After plaintiff left the CONVALESCENT HOSPITAL she continued to treat with some of the UCSD DEFENDANT DOCTORS, including defendant, RICHARD TODD ALLEN, M.D., including having surgery by defendant RICHARD TODD ALLEN, M.D. at UCSD MEDICAL CENTER on or about January 27, 2012 to remove the hardware in her low back and pelvis, and still no one told plaintiff she had a Cook IVC Filter placed in her or that she needed to have it removed.

26.     To the extent that plaintiff may have signed a consent for the IVC Filter placement or been told about it at the time of its placement, plaintiff's medical condition at that time, pain medication, infection, delirium, and incoherence prevented her from understanding or appreciating the

1  fact that a Cook IVC Filter had been placed in her or that it needed to be removed as soon as possible

2  after she was ambulatory and no longer had a high risk of developing DVT. Plaintiff did not learn that

3  she had a Cook IVC Filter in her body until approximately July or August 2016 when she was told to

4  check into it by a physician she was seeing. Plaintiff did not learn that it was irretrievable until

5  approximately September 7, 2016 when she saw a vascular surgeon who told her that the Cook IVC

6  Filter had imbedded in her infrarenal inferior vena cava and could no longer be safely removed.

7  Plaintiff gave notice of this impending suit pursuant to Code of Civil Procedure sectin 364 to the

8  UCSD DEFENDANTS and the UCSD DOCTOR DEFENDANTS on March 14, 2017 and to the

9  POINT LOMA DEFENDANTS and the CAVA DEFENDANTS on April 21, 2017.

10  **FIRST CAUSE OF ACTION OF CHRISTINE KAY AGAINST THE REGENTS,**

11  **THE UCSD DEFENDANTS, MEDICAL GROUP DEFENDANTS, THE UCSD**

12  **DEFENDANT DOCTORS, AND UCSD NURSES FOR MEDICAL NEGLIGENCE**

13  27.   Plaintiff incorporates by reference paragraphs 1 through 26 with the same force and

14  effect as though fully set forth herein.

15  28.   At all times mentioned herein the UCSD DEFENDANTS, MEDICAL GROUP

16  DEFENDANTS, and the UCSD DOCTOR DEFENDANTS were the plaintiff's physicians, hospitals,

17  and medical providers and as such had a quasi-fiduciary duty to act on plaintiff's behalf and best

18  interest as far as her health needs and health issues were concerned while she was under their care.

19  Each of these defendants along with the UCSD NURSES owed plaintiff a duty of care and a duty to

20  act as other reasonable doctors, nurses, and hospitals would act under similar conditions.

21  29.   At all times after the IVC Filter was placed in plaintiff's infrarenal inferior vena cava,

22  the UCSD DEFENDANTS, MEDICAL GROUP DEFENDANTS, the UCSD DOCTOR

23  DEFENDANTS, and the UCSD NURSES owed plaintiff a duty to inform her at a time when she was

24  mentally coherent that medical necessity had required that a Cook IVC Filter be placed in her, that the

25  Cook IVC Filter was retrievable, that plaintiff should have it removed within 2 to 3 months of

26  placement, that the Cook IVC Filter could present serious hazards to her health and safety if not timely

27  removed, that the Cook IVC Filter could fracture, migrate, tilt, become dislodged, or become

28  imbedded in the lining of the vein so it could not later be removed, all of which presented potentially

1    serious risks and complications to plaintiff's health and safety, and that plaintiff needed to follow-up to
2    make certain the Cook IVC Filter was timely removed.  These defendants negligently and carelessly
3    did none of these things.  They did not inform plaintiff at a time when she was mentally coherent that
4    she had a Cook IVC Filter, did not tell plaintiff it should be removed in 2 to 3 months, did not tell
5    plaintiff that it posed serious health risks if left in place for longer than 2 to 3 months, did not tell
6    plaintiff that the Cook IVC Filter could fracture, migrate, tilt, become dislodged, or become imbedded
7    in the lining of the vein so it later could not be removed.

8         30.    Plaintiff is informed and believes and on this basis alleges that reasonable and
9    appropriate medical practice required the UCSD DEFENDANTS to have procedures and protocols in
10   place so that plaintiff would be provided with written information regarding her Cook IVC Filter that
11   informed plaintiff of certain minimal information about her Cook IVC Filter including, but not limited
12   to, the fact that she had a Cook IVC Filter placed, the date of placement, the name of the manufacturer,
13   the product identification and serial numbers relating to her Cook IVC Filter, the fact that it was
14   removable and that plaintiff should have it removed in 2 to 3 months if no longer needed.  The UCSD
15   DEFENDANTS negligently and carelessly did none of these things.  Plaintiff did not receive any
16   written information from the UCSD DEFENDANTS regarding the above information, and Plaintiff is
17   informed and believes and on this basis alleges that the UCSD DEFENDANTS negligently and
18   carelessly did not have procedures and protocols in place to provide such written information to
19   plaintiff and/or if such procedures and protocols were in place, negligently and carelessly failed to
20   follow them.

21        31.    When defendant BENJAMIN JOHN DRINKWINE, M.D. placed the Cook IVC Filter
22   in plaintiff, he recognized that it should be removed in 2 to 3 months, yet he negligently and carelessly
23   failed to follow-up with plaintiff to see if she knew she had a Cook IVC Filter and/or knew it should
24   be timely removed.  Defendant BENJAMIN JOHN DRINKWINE, M.D. knew of the seriousness of
25   plaintiff's condition at the time of placement and that her debilitated health condition at that time
26   might prevent her from understanding or remembering anything she was told at the time of placement,
27   and he had a duty to follow-up with plaintiff to make certain she knew and understood she had a Cook
28   IVC Filter and knew and understood the need to have it removed as soon as possible and the dangers

1    and risks of not doing so. Defendant, BENJAMIN JOHN DRINKWINE, M.D. negligently and

2    carelessly breached all of these duties and failed to contact plaintiff after placement to make certain

3    she knew and understood she had a Cook IVC Filter, knew and understood she needed to have it

4    removed as soon as possible, and knew and understood the IVC FILTER RISKS of not doing so.

5    Defendant BENJAMIN JOHN DRINKWINE, M.D. failed to do any of these things.

6        32.    Defendant RICHARD TODD ALLEN, M.D. was the surgeon who surgically repaired

7    plaintiff's sacral and pelvic fractures at UCSD MEDICAL CENTER and was involved in the decision

8    to recommend placement of the Cook IVC Filter. After her release from UCSD MEDICAL CENTER

9    and the CONVELESCENT HOSPITAL, plaintiff continued to treat with Defendant RICHARD TODD

10   ALLEN, M.D. for her pelvic and sacral fractures as an outpatient. Plaintiff was regularly seen at

11   defendant RICHARD TODD ALLEN, M.D.'s office and x-rays were regularly taken of her lower

12   spine. These x-rays showed plaintiff's Cook IVC Filter, and radiology reports of the films regularly

13   referred to the presence of the Cook IVC Filter. As a part of his care and treatment of plaintiff,

14   defendant RICHARD TODD ALLEN, M.D. would regularly review the films and radiology reports

15   that showed and referred to the Cook IVC Filter, but in all of plaintiff's treatments with defendant

16   RICHARD TODD ALLEN, M.D., he never told plaintiff of the existence of the Cook IVC Filter, or

17   that it was removable, or that plaintiff should check into having it removed, or the dangers, and the

18   IVC FILTER RISKS to plaintiff's heath of not removing it.

19       33.    On or about January 27, 2012, plaintiff returned to UCSD MEDICAL CENTER for

20   removal by defendant RICHARD TODD ALLEN, M.D. of the deep spinal and pelvic hardware from

21   her surgery on June 8, 2011. At no time during this hospitalization and surgery did defendant

22   RICHARD TODD ALLEN, M.D., or any of the other defendants associated with the UCSD

23   MEDICAL CENTER, tell plaintiff she had a Cook IVC Filter, that it was still potentially retrievable,

24   that it posed significant long term hazards to her health and that she should immediately be referred to

25   Interventional Radiology to have it removed. At all times during this hospitalization, surgery and

26   treatment, UCSD DEFENDANTS, defendant RICHARD TODD ALLEN, M.D., and the UCSD

27   ///

28   ///

Exhibit A
Page 24

1  DOCTOR DEFENDANTS negligently and carelessly failed to tell plaintiff she had a Cook IVC Filter,

2  that it was still potentially retrievable, that she needed to be seen by an Interventional Radiologist to

3  have it removed and that it presented significant long term hazards to her health if it was not removed.

4      34.   Plaintiff had no awareness of the placement of the Cook IVC Filter in her until

5  approximately July or August 2016.   Since at least her release from the CONVALESCENT

6  HOSPITAL plaintiff had a Cook IVC Filter in her body that provided no therapeutic value.   During

7  this time while plaintiff had no awareness of the Cook IVC Filter in her body, she did not have any

8  pain, difficulty or reason to suspect she had a Cook IVC Filter.   During this time while plaintiff was

9  ignorant of the placement of the Cook IVC Filter in her body, any applicable statutes of limitation

10  were tolled and defendants, by their conduct and negligence, are estopped to assert the running of any

11  applicable statutes of limitation.   Plaintiff incorporates herein by reference paragraphs 171 through 178

12  with the same force and effect as though fully set forth herein.

13      35.   In doing the things set forth herein the UCSD DEFENDANTS, MEDICAL GROUP

14  DEFENDANTS, the UCSD DOCTOR DEFENDANTS, and the UCSD NURSE DEFENDANTS

15  negligently and carelessly treated and cared for plaintiff, thereby failing to conform to the standard of

16  care required by reasonably competent hospitals, doctors, and nurses in that they:

17          (a)    negligently and carelessly cared for plaintiff;

18          (b)    negligently and carelessly failed to inform plaintiff of the existence of the Cook

19  IVC Filter in her body;

20          (c)    negligently and carelessly failed to inform plaintiff that she should have the

21  Cook IVC Filter removed after 2 to 3 months or as soon as possible;

22          (d)    negligently and carelessly failed to refer plaintiff to Interventional Radiology to

23  have the Cook IVC Filter removed;

24          (e)    negligently and carelessly failed to tell plaintiff of the IVC FILTER RISKS to

25  her health if the Cook IVC Filter was not timely removed;

26  / / /

27  / / /

28  / / /

**COMPLAINT**

1      (f)     negligently and carelessly failed to have procedures and protocols in place to

2 provide plaintiff with written information regarding her Cook IVC Filter, the manufacturer's name,

3 product identification and serial numbers, and/or failed to follow those procedures and protocols if

4 they exist; and

5      (g)     negligently and carelessly failed to explore other treatment options for plaintiff

6 to prevent DVT formation, such as anticoagulation once the surgery was completed and bleeding risks

7 were no longer apparent, so that the Cook IVC filter could be removed sooner than the 2 to 3 months.

8     36.     As a legal result of the negligence of each of these defendants, plaintiff has sustained

9 the following damages:

10      (a)     plaintiff has a Cook IVC Filter that is imbedded in her infrarenal inferior vena

11 cava that can no longer be removed without extensive life threatening surgery;

12      (b)     plaintiff has been informed that her Cook IVC Filter has been recalled by the

13 manufacturer and poses substantial risks to her health due to movement, migration, fracture,

14 dislodgment, embolization, and plaintiff fears and suffers great emotional distress each day that her life

15 may end or be seriously impaired by the Cook IVC Filter;

16      (c)     plaintiff has been injured in her health, strength and activities sustaining serious

17 bodily injury, damage and shock to her mental and nervous system, which injuries have caused and

18 continue to cause great mental, physical and emotional pain and suffering to plaintiff, all to her

19 damage in a sum according to proof at trial;

20      (d)     plaintiff has incurred or will incur medical, hospital, nursing, attendant, and

21 other related expenses in a sum according to proof at trial;

22      (e)     plaintiff requires regular medical monitoring and imaging studies to monitor the

23 location and movement of the Cook IVC Filter to make certain it does not further imperil her health in

24 a sum according to proof at trial; and

25      (f)     plaintiff has lost and will lose the value of her time and income in a sum

26 according to proof at trial.

27 ///

28 ///

**COMPLAINT**

## SECOND CAUSE OF ACTION OF CHRISTINE KAY AGAINST THE POINT LOMA DEFENDANTS, CAVA DEFENDANTS, AND POINT LOMA NURSES FOR MEDICAL NEGLIGENCE

37.     Plaintiff incorporates by reference paragraphs 1 through 26, 34 and 36 with the same force and effect as though fully set forth herein.

38.     At all times herein mentioned POINT LOMA DEFENDANTS owned and operated the CONVALESCENT HOSPITAL that cared for plaintiff from approximately June 16, 2011 to July 22, 2011, and the CAVA DEFENDANTS were the admitting doctors and attending doctors who cared for plaintiff while she was a patient at the CONVALESCENT HOSPITAL.  As such, they each had a quasi-fiduciary duty to act on plaintiff's behalf and best interest as far as her health needs and health issues were concerned while she was under their care.  The POINT LOMA NURSES were employees and agents of the POINT LOMA DEFENDANTS and cared for plaintiff while she was a patient at the CONVALESCENT HOSPITAL and had a duty to act in her best interests as far as her health issues were concerned while plaintiff was under their care.  Each of these defendants owed plaintiff a duty of care and a duty to act as other reasonable doctors and convalescent and nursing hospitals would act under similar conditions.

39.     At all times after the Cook IVC Filter was placed in plaintiff and plaintiff was a patient at the CONVALESCENT HOSPITAL, the POINT LOMA DEFENDANTS, the CAVA DEFENDANTS, and the POINT LOMA NURSES owed plaintiff a duty to inform her of the placement of the Cook IVC Filter, that the Cook IVC Filter was retrievable, that plaintiff should have it removed within 2 to 3 months of placement, that the Cook IVC Filter could present serious hazards to her health and safety due to the IVC FILTER RISKS if not timely removed, that the IVC Filter could fracture, migrate, tilt, become dislodged, become imbedded in the lining of the vein so it could not later be removed all of which presented potentially serious risks and complications to plaintiff's health and safety and that she needed to be referred to Interventional Radiology at UCSD MEDICAL CENTER for retrieval.  These defendants did none of these things.  They negligently and carelessly did not tell plaintiff she had a Cook IVC Filter, did not tell plaintiff it should be removed in 2 to 3 months after placement, did not tell plaintiff of the IVC FILTER RISKS that presented serious risks to

13

**COMPLAINT**

1    her health and safety if not removed, did not tell plaintiff that if left in place for too long the Cook IVC

2    Filter could fracture, migrate, tilt, become dislodged, become imbedded in the lining of the vein so it

3    later could not be removed, and did not schedule an appointment for her to return to Interventional

4    Radiology at UCSD MEDICAL CENTER to be evaluated for its removal or tell her she needed to do

5    so.

6        40.    Plaintiff is informed and believes and on this basis alleges that when plaintiff was

7    admitted to the CONVALESCENT HOSPITAL, the POINT LOMA DEFENDANTS, CAVA

8    DEFENDANTS, and the POINT LOMA NURSES were aware that plaintiff had a Cook IVC Filter

9    that should be removed within 2 to 3 months after placement and that she needed to be referred back to

10    Interventional Radiology at UCSD MEDICAL CENTER for that purpose. Plaintiff is informed and

11    believes and on this basis alleges that the Admission Orders signed by the CAVA DEFENDANTS

12    provided in part "Follow up Interventional Radiology in 6 weeks to remove IVC Filter." This Order,

13    however, was never given to plaintiff and was only provided to the doctors and nurses at the

14    CONVALESCENT HOSPITAL.

15        41.    At no time while plaintiff was hospitalized at the CONVALESCENT HOSPITAL was

16    she ever told she had a Cook IVC Filter or needed to have it removed or told of any risks or dangers in

17    not having it removed.

18        42.    On or about July 22, 2011 plaintiff was discharged from the CONVALESCENT

19    HOSPITAL by the CAVA DEFENDANTS. In the Discharge Plan of Care prepared by the POINT

20    LOMA DEFENDANTS, the CAVA DEFENDANTS, and the POINT LOMA NURSES and given to

21    plaintiff by the POINT LOMA DEFENDANTS and the POINT LOMA NURSES, plaintiff was not

22    advised of the existence of the Cook IVC Filter, or the need to have it removed, or the need to go to

23    Interventional Radiology at UCSD MEDICAL CENTER for evaluation and removal. No appointment

24    was scheduled by these defendants for this purpose, even though plaintiff was advised of appointments

25    with 2 other doctors.

26    ///

27    ///

28    ///

**COMPLAINT**

1    43.   In doing the things set forth herein, the POINT LOMA DEFENDANTS, the CAVA

2  DEFENDANTS, and the POINT LOMA NURSES negligently and carelessly treated and cared for

3  plaintiff, thereby failing to conform to the standard of care required by reasonably competent

4  convalescent hospitals and doctors in that they:

5           (a)   negligently and carelessly cared for plaintiff;

6           (b)   negligently and carelessly failed to inform plaintiff of the existence of the Cook

7  IVC Filter;

8           (c)   negligently and carelessly failed to inform plaintiff that she needed to have the

9  Cook IVC Filter removed;

10          (d)   negligently and carelessly failed to refer plaintiff to Interventional Radiology to

11  have the Cook IVC Filter removed or set an appointment for her to do so; and

12          (e)   negligently and carelessly failed to tell plaintiff of the risks and hazards to her

13  health if the Cook IVC Filter was not removed.

14    44.   As a legal result of the negligence of each of these defendants, plaintiff has sustained

15  the following damages:

16          (a)   plaintiff has a Cook IVC Filter that is imbedded in her infrarenal inferior vena

17  cava that can no longer be removed without extensive life threatening surgery;

18          (b)   plaintiff has been informed that her Cook IVC Filter has been recalled by the

19  manufacturer and poses substantial risks to her health due to movement, migration, fracture,

20  dislodgment, embolization, and plaintiff fears and suffers great emotional distress each day that her life

21  may end or be seriously impaired by the Cook IVC Filter;

22          (c)   plaintiff has been injured in her health, strength and activities sustaining serious

23  bodily injury, damage and shock to her mental and nervous system, which injuries have caused and

24  continue to cause great mental, physical and emotional pain and suffering to plaintiff, all to her

25  damage in a sum according to proof at trial;

26          (d)   plaintiff has incurred or will incur medical, hospital, nursing, attendant, and

27  other related expenses in a sum according to proof at trial;

28  ///

15

**COMPLAINT**

1    (e)    plaintiff requires regular medical monitoring and imaging studies to monitor the

2    location and movement of the Cook IVC Filter to make certain it does not further imperil her health in

3    a sum according to proof at trial; and

4    (f)    plaintiff has lost and will lose the value of her time and income in a sum

5    according to proof at trial.

6    **THIRD CAUSE OF ACTION OF CHRISTINE KAY**

7    **AGAINST THE COOK DEFENDANTS**

8    45.    Plaintiff incorporates by reference paragraphs 1 through 26, 36 and 44 with the same

9    force and effect as though fully set forth herein.

10    **INTRODUCTION**

11    46.    This is an action for damages against COOK GROUP, INC., COOK MEDICAL

12    INCORPORATED a/k/a COOK MEDICAL, INC., COOK MEDICAL, LLC, COOK

13    INCORPORATED, MEDICAL ENGINEERING AND DEVELOPMENT INSTITUTE, INC., COOK

14    MEDICAL TECHNOLOGIES, COOK DENMARK INTERNATIONAL APS, COOK DENMARK

15    HOLDING APS, COOK GROUP EUROPE APS, COOK NEDERLAND BV, WILLIAM COOK

16    EUROPE APS (hereinafter collectively referred to as "COOK" and/or "Defendants"). The allegations,

17    claims and theories of recovery relate to the COOK's design, manufacture, sale, testing, marketing,

18    labeling, advertising, promotion and/or distribution of its unsafe medical devices known as the

19    Gunther Tulip Mreye, Gunther Tulip Vena Cava Filter, Cook Celect Vena Cava Filter, and Cook

20    Celect Platinum (hereinafter collectively "Cook IVC Filter(s)"). Plaintiff's specific filter, as set forth

21    in paragraph 20, is the Gunter Tulip Vena Cava Filter.

22    47.    Cook IVC Filters are associated with, and cause, an increased risk for serious injury and

23    death as a result of adverse events including: tilting, perforation, fracture, breakage and migration.

24    48.    At all times relevant to this action, COOK intentionally, recklessly, and/or negligently

25    failed to act as to the known failures and injuries associated with its devices and/or failed to warn

26    about and concealed, suppressed, omitted, and/or misrepresented the risks, dangers, defects and

27    disadvantages of its Cook IVC Filters.

28    ///

16

**COMPLAINT**

1    49.   At all times relevant to this action, COOK intentionally, recklessly, and/or negligently

2    advertised, labeled, promoted, marketed, sold and/or distributed its Cook IVC Filters as a safe medical

3    device when in fact COOK had reason to know, and/or did know, that its Cook IVC Filters were not

4    safe for its intended purposes, and that its Cook IVC Filters caused serious injury and death.

5    50.   At all times relevant to this action, COOK is and was strictly liable for injuries caused

6    by its Cook IVC Filters because the devices are unreasonably dangerous and not accompanied by

7    adequate warnings about its danger.

8    51.   Defendant Cook Group, Incorporated is an Indiana Corporation with a principal place

9    of business located at 750 Daniels Way, Bloomington, Indiana 47404.  Defendant Cook Group,

10   Incorporated regularly conducts business in the State of Illinois and Indiana, and is authorized to do so

11   and regularly conducts business in the state of California through the marketing, distribution,

12   promoting, selling, and advertising of its products including the Cook IVC Filters.  Defendant Cook

13   Group, Incorporated may be served with process upon its registered agent for service: C/O CSC

14   Lawyers Incorporating Service, 50 West Broad Street, Suite 1800, Columbus, Ohio 43215.

15   52.   Defendant Cook Group, Incorporated is the parent company of Defendant Cook

16   Medical, Incorporated and is an Indiana Corporation with a principal place of business located at 750

17   Daniels Way, P.O. Box 489, Bloomington, Indiana 47402. Defendant Cook Group, Incorporated

18   regularly conducts business in the State of Illinois and Indiana, and is authorized to do so and regularly

19   conducts business in the state of California through the marketing, distribution, promoting, selling, and

20   advertising of its products including the Cook IVC Filters.  Defendant Cook Group, Incorporated may

21   be served with process upon its registered agent for service: C/O CSC Lawyers Incorporating Service,

22   50 West Broad Street, Suite 1800, Columbus, Ohio 43215.

23   53.   Defendant Cook Group, Inc. is the parent company of Defendant Cook Medical LLC

24   and is an Indiana Corporation with a principal place of business located at 750 Daniels Way, P.O. Box

25   1608, Bloomington, Indiana 47402. Defendant Cook Group Incorporated regularly conducts business

26   in the State of Illinois and Indiana, and is authorized to do so and regularly conducts business in the

27   state of California through the marketing, distribution, promoting, selling, and advertising of its

28   ///

17

**COMPLAINT**

1   products including the Cook IVC Filters. Defendant Cook Medical, LLC may be served with process

2   upon its registered agent for service: C/O CSC Lawyers Incorporating Service, 50 West Broad Street,

3   Suite 1800, Columbus, Ohio 43215.

4       54.   Defendant Cook Group, Inc. is the parent company of Defendant Cook Incorporated

5   and is an Indiana Corporation with a principal place of business located at 750 Daniels Way, P.O. Box

6   1608, Bloomington, Indiana 47402. Defendant Cook Group Incorporated regularly conducts business

7   in the State of Illinois and Indiana, and is authorized to do so and regularly conducts business in the

8   state of California through the marketing, distribution, promoting, selling, and advertising of its

9   products including the Cook IVC Filters. Defendant Cook Incorporated may be served with process

10  upon its registered agent for service: C/O CSC Lawyers Incorporating Service, 50 West Broad Street,

11  Suite 1800, Columbus, Ohio 43215.

12      55.   Defendant Cook Group, Inc. is the parent company of Defendant Medical Engineering

13  and Development Institute, Inc. and is an Indiana Corporation with a principal place of business

14  located at 750 Daniels Way, P.O. Box 1608, Bloomington, Indiana 47402. Defendant Cook Group

15  Incorporated regularly conducts business in the State of Illinois and Indiana, and is authorized to do so

16  and regularly conducts business in the state of California through the marketing, distribution,

17  promoting, selling, and advertising of its products including the Cook IVC Filters. Defendant Medical

18  Engineering and Development Institute, Inc. may be served with process upon its registered agent for

19  service: C/O CSC Lawyers Incorporating Service, 50 West Broad Street, Suite 1800, Columbus, Ohio

20  43215.

21      56.   Defendant Cook Group, Inc. is the parent company of Defendant Cook Medical

22  Technologies and is an Indiana Corporation with a principal place of business located at 750 Daniels

23  Way, P.O. Box 1608, Bloomington, Indiana 47402. Defendant Cook Group, Inc. regularly conducts

24  business in the State of Illinois and Indiana, and is authorized to do so and regularly conducts business

25  in the state of California through the marketing, distribution, promoting, selling, and advertising of its

26  products including the Cook IVC Filters. Defendant Cook Medical Technologies may be served with

27  process upon its registered agent for service: C/O CSC Lawyers Incorporating Service, 50 West Broad

28  Street, Suite 1800, Columbus, Ohio 43215.

1    57.    Defendant Cook Group, Inc. is the parent company of Defendant Cook Denmark

2  International APS and is an Indiana Corporation with a principal place of business located at 750

3  Daniels Way, P.O. Box 1608, Bloomington, Indiana 47402. Defendant Cook Group Incorporated

4  regularly conducts business in the State of Illinois and Indiana, and is authorized to do so and regularly

5  conducts business in the state of California through the marketing, distribution, promoting, selling, and

6  advertising of its products including the Cook IVC Filters.  Defendant Cook Denmark International

7  APS may be served with process upon its registered agent for service: C/O CSC Lawyers

8  Incorporating Service, 50 West Broad Street, Suite 1800, Columbus, Ohio 43215.

9    58.    Defendant Cook Group, Inc. is the parent company of Defendant Cook Denmark

10  Holding APS and is an Indiana Corporation with a principal place of business located at 750 Daniels

11  Way, P.O. Box 1608, Bloomington, Indiana 47402. Defendant Cook Group Incorporated regularly

12  conducts business in the State of Illinois and Indiana, and is authorized to do so and regularly conducts

13  business in the state of California through the marketing, distribution, promoting, selling, and

14  advertising of its products including the Cook IVC Filters.  Defendant Cook Denmark Holding APS

15  may be served with process upon its registered agent for service: C/O CSC Lawyers Incorporating

16  Service, 50 West Broad Street, Suite 1800, Columbus, Ohio 43215.

17    59.    Defendant Cook Group, Inc. is the parent company of Defendant Cook Group Europe

18  APS and is an Indiana Corporation with a principal place of business located at 750 Daniels Way, P.O.

19  Box 1608, Bloomington, Indiana 47402. Defendant Cook Group Incorporated regularly conducts

20  business in the State of Illinois and Indiana, and is authorized to do so and regularly conducts business

21  in the state of California through the marketing, distribution, promoting, selling, and advertising of its

22  products including the Cook IVC Filters.  Defendant Cook Group Europe APS may be served with

23  process upon its registered agent for service: C/O CSC Lawyers Incorporating Service, 50 West Broad

24  Street, Suite 1800, Columbus, Ohio 43215.

25    60.    Defendant Cook Group, Inc. is the parent company of Defendant Cook Nederland BV

26  and is an Indiana Corporation with a principal place of business located at 750 Daniels Way, P.O. Box

27  1608, Bloomington, Indiana 47402. Defendant Cook Group Incorporated regularly conducts business

28  in the State of Illinois and Indiana, and is authorized to do so and regularly conducts business in the

**COMPLAINT**

1    state of California through the marketing, distribution, promoting, selling, and advertising of its

2    products including the Cook IVC Filters. Defendant Cook Nederland BV may be served with process

3    upon its registered agent for service: C/O CSC Lawyers Incorporating Service, 50 West Broad Street,

4    Suite 1800, Columbus, Ohio 43215.

5        61.    Defendant William Cook Europe APS is based in Bjaeverskov, Denmark and regularly

6    conducts business in the State of Illinois and Indiana, and is authorized to do so and regularly conducts

7    business in the state of California through the marketing, distribution, promoting, selling, and

8    advertising of its products including the Cook IVC Filters. Defendant William Cook Europe APS may

9    be served with process upon its registered agent for service: C/O CSC Lawyers Incorporating Service,

10   50 West Broad Street, Suite 1800, Columbus, Ohio 43215.

11       62.    Defendants MED Institute, Inc. and Cook MED Institute, Inc., (MED = Medical

12   Engineering and Development) are Indiana Corporations with principal places of business located at 1

13   Geddes Way, West Lafayette, Indiana 47906 and are subject to the jurisdiction of this Court.

14   Defendants MED Institute, Inc. and Cook MED Institute, Inc., regularly conduct business in the

15   United States to include the State of Georgia and are authorized to do so and regularly conducts

16   business in the state of California through the marketing, distribution, promoting, selling, and

17   advertising of its products including the Cook IVC Filters. Defendants MED Institute, Inc. and Cook

18   MED Institute, Inc. may be served with process upon their registered agent for service: C/O

19   Corporation Service Company, 251 East Ohio Street, Suite 500, Indianapolis, IN 46204.

20       63.    At all times alleged herein, the COOK defendants include any and all parent companies,

21   subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any

22   kind, their predecessors, successors and assigns and their officers, directors, employees, agents,

23   representatives and any and all other persons acting on their behalf.

24       64.    COOK develops, manufactures, sells and distributes medical devices for use in various

25   medical applications including endovascular cardiology, and surgical products throughout the United

26   States and around the world. COOK's products include the Gunther Tulip Mreye, Gunther Tulip Vena

27   Cava Filter, Cook Celect Vena Cava Filter, and the Cook Celect Platinum all of which are used for the

28   prevention of recurrent pulmonary embolism via placement in the vena cava.

**COMPLAINT**

65. Defendants are present and doing business within this state and have continuous and systematic contacts in this state of California and every state in the United States of America.

66. At all times relevant, COOK was engaged in the business of researching, designing, testing, developing, manufacturing, packaging, labeling, marketing, advertising, distributing, promoting, warranting and selling in interstate commerce, its Cook IVC Filters either directly or indirectly through third parties or related entities.

67. The Defendants are subject to *in personam* jurisdiction in California because of the activity conducted therein. Defendants' activities in California include: marketing, advertising, promoting, distributing, and receiving substantial compensation and profits from sales and other acts that caused or contributed to the harm giving rise to this action. Defendants also made or caused to be made material omissions and misrepresentations and breaches of warranties in California.

## FACTUAL BACKGROUND

68. Defendants design, research, develop, manufacturer, test, market, advertise, promote, distribute, and sell products that are sold to and marketed to prevent, among other things, recurrent pulmonary embolism via placement in the vena cava. Defendants' products include, the Gunther Tulip Filter placed in plaintiff (referred to herein as "Cook IVC Filter(s)"), which are introduced via a coaxial introducer sheath system.

69. Defendants sought Food and Drug Administration ("FDA") approval to market the Cook IVC Filters and/or its components under Section 510(k) of the Medical Device Amendment. Section 510(k) allows marketing of medical devices if the device is substantially equivalent to other legally marketed predicate devices without formal review for the safety or efficacy of the said device. The FDA explained the difference between the 510(k) process and the more rigorous "premarket approval" process in an amicus brief filed with the Third Circuit in *Horn v. Thoratec Corp.*, 376 F.3d 163, 167 (3d Cir. 2004):

///

///

///

///

> A manufacturer can obtain an FDA finding of "substantial equivalence" by submitting a premarket notification to the agency in accordance with section 510(k)...A device found to be 'substantially equivalent' to a predicate device is said to be "cleared" by FDA (as opposed to "approved" by the agency under a [premarket approval]). A pre-market notification submitted under 510(k) is thus entirely different from a [pre-market approval] which must include data sufficient to demonstrate that the device is safe and effective. (Emphasis in original).

70. In *Medtronic, Inc. v. Lohr*, 518 U.S. 470,478-79 (1996), the Supreme Court similarly described the 510(k) process, observing:

> If the FDA concludes on the basis of the [manufacturer's] §510(k) notification that the device is 'substantially equivalent' to a pre-existing device, it can be marketed without further regulatory analysis...The §510(k) notification process is by no means comparable to the [premarket approval] process; in contract to the 1,200 hours necessary to complete a PMA review, the §510(k) review is completed in average of 20 hours...Section §510(k) notification requires little information, rarely elicits a negative response from the FDA, and gets process quickly.

71. An IVC filter, like the Cook Filters, is a device designed to filter blood clots (called "thrombi") that travel from the lower portions of the body to the heart and lungs. IVC filters may be designed to be implanted, either temporarily or permanently, within the vena cava.

72. The inferior vena cava is a vein that returns blood to the heart from the lower portion of the body. In certain people, and for various reasons, thrombi travel from vessels in the legs and pelvis, through the vena cava into the lungs. Often these thrombi develop in the deep leg veins. The thrombi are called "deep vein thrombosis" or DVT. Once the thrombi reach the lungs they are considered "pulmonary emboli" or PE. An IVC filter, like the Cook IVC Filters, is designed to prevent thromboembolic events.

73. The Cook IVC Filters are retrievable filters.

74. The Gunther Tulip® Vena Cava Filter has a top hook and (4) anchoring struts for fixation and on each strut, it has a "flower" formation that is shorter than the strut where a wire piece branches out on each side of the strut forming an overall "flower" type formation on each strut.

75.     At all times relevant hereto, the Cook IVC Filters were widely advertised and promoted by the Defendants as safe and effective treatment for prevention of recurrent pulmonary embolism via placement in the vena cava. At all times relevant hereto, Defendants knew its Cook IVC Filters were defective and knew that defect was attributable to the design's failure to withstand the normal anatomical and physiological loading cycles exerted *in vivo*.

76.     A retrospective review of all Cook Gunther Tulip Filters and Cook Celect filters retrieved between July 2006 and February 2008 was performed. One hundred and thirty (130) filter retrievals were attempted but in 33 cases, the standard retrieval technique failed. The authors concluded that "unsuccessful retrieval was due to significant endothelialization and caval penetration" and that "hook endothelialization is the main factor resulting in failed retrieval and continues to be a limitation with these filters." O. Doody, et al.; "Assessment of Snared-Loop Technique When Standard Retrieval of Inferior Vena Cava Filters Fail" Cardiovasc Intervent Radiol (Sept 4, 2008 Technical Note).

77.     A retrospective review of 115 patients who underwent Cook Celect IVC filter insertion between December 2005 and October 2007 was performed. While filter insertion was successful in all patients, the authors also concluded that "[f]ailed retrieval secondary to hook endothelialization continues to be an issue with this filter." O. Doody, et al; Journal of Medical Imaging and Radiation Oncology "Initial Experience in 115 patients with the retrievable Cook Celect vena cava filter" 53 (2009) 64-68 (original article).

78.     In a review of clinical data related to 73 patients who had Celect IVC filter implanted between August 2007 and June 2008, the authors found that the Celect IVC filter was related to a high incidence of caval filter leg penetration. Immediately after fluoroscopy-guided filter deployment in 61 patients, four filters (6.5%) showed significant tilt. Follow-up abdominal CT in 18 patients demonstrated filter related problems in 7 (39%), which included penetration of filter legs in 4 and fracture/migration of filter components in 1.

79.     In a study of Gunther Tulip and Celect IVC filters implanted between July 2007 and May of 2009 reported by Cardiovascular Interventional Radiology electronically on March 30, 2011 and published by journal in April 2012, one hundred percent of the Cook Celect filters and Gunther

23

**COMPLAINT**

Exhibit A
Page 37

1   Tulip filters imaged after 71 days of implant caused some degree of filter perforation of the venal caval

2   wall. Durack JC, et al, Cardiovasc Intervent Radiol., "Perforation of the IVC: rule rather than the

3   exception after longer indwelling times for the Gunther Tulip and Celect Retrievable Filters," 2012

4   Apr.; 35(2):299-308. Epub 2011 Mar 30. The authors concluded: "Although infrequently reported in

5   the clinical literature, clinical sequelae from IVC filter components breaching the vena cava can be

6   significant." Defendants knew or should have known that their IVC filters were more likely than not to

7   perforate the vena cava wall.

8       80.     This same study reported that tilt was seen in 20 out of 50 (40%) of the implanted

9   Gunther Tulip and Celect IVC filters and all titled filters also demonstrated vena caval perforation.

10   Defendants knew or should have known that their Cook IVC Filters were more likely than not to tilt

11   and to perforate.

12       81.     While not inclusive of all medical studies published during the relevant time period, the

13   above references show that the Defendants failed to disclose to physicians, patients and/or Plaintiffs

14   that its Cook IVC Filters were subject to breakage, tilt, inability of removal, and migration even

15   though they knew or should have known the same was true.

16       82.     At all times relevant hereto, the Defendants continued to promote the Cook IVC Filter

17   as safe and effective even when inadequate clinical trials had been performed to support long or short

18   safety and/or efficacy.

19       83.     The Defendants concealed the known risks and failed to warn of known or scientifically

20   knowable dangers and risks associated with the Cook IVC Filters, as aforesaid.

21       84.     The Cook IVC Filters are constructed of conichrome.

22       85.     The Defendants specifically advertise the conichrome construction of the filter as a

23   frame which "reduces the risk of fracture."

24       86.     The failure of the Cook IVC Filters is attributable, in part, to the fact that the Cook IVC

25   Filters suffer from a design defect causing it to be unable to withstand the normal anatomical and

26   physiological loading cycles exerted *in vivo*.

27   / / /

28   / / /

87.    At all times relevant hereto, the Defendants failed to provide sufficient warnings and instructions that would have put plaintiff and the general public on notice of the dangers and adverse effects caused by implantation of the Cook IVC Filters, including, but not limited to the design's failure to withstand the normal anatomical and physiological loading cycles exerted *in vivo*.

88.    The Cook IVC Filters were designed, manufactured, distributed, sold and/or supplied by the Defendants, and were marketed while defective due to the inadequate warnings, instructions, labeling, and/or inadequate testing in light of Defendants' knowledge of the products' failure and serious adverse events.

89.    At all times relevant hereto, the officers and/or directors of the Defendants named herein participated in, authorized and/or directed the production and promotion of the aforementioned products when they knew or should have known of the hazardous and dangerous propensities of the said products, and thereby actively participated in the tortious conduct that resulted in the injuries suffered by plaintiff.

## COUNT I: STRICT PRODUCTS LIABILITY – FAILURE TO WARN

90.    Plaintiff repeats and re-allege paragraphs 45 through 89 as if set forth in full in this count.

91.    Cook IVC Filters were defective and unreasonably dangerous when they left the possession of the Defendants in that they contained warnings insufficient to alert consumers, including plaintiff and her doctors, of the dangerous IVC FILTER RISKS associated with the subject product, including but not limited to the risk of tilting, perforation, fracture and migration which are associated with and did cause serious injury and/or death.

92.    Information provided by COOK to the medical community and to consumers concerning the safety and efficacy of its Cook IVC Filters did not accurately reflect the serious and potentially fatal adverse events plaintiff could suffer.

/ / /

/ / /

/ / /

/ / /

25

**COMPLAINT**

1   93.   At all times relevant hereto, the Cook IVC Filters were dangerous and presented a

2   substantial danger to patients who were implanted with the Cook IVC Filter, and these risks and

3   dangers were known or knowable at the times of distribution and implantation in plaintiff. Ordinary

4   consumers would not have recognized the potential risks and dangers the Cook IVC Filters posed to

5   patients because their use was specifically promoted to improve health of such patients.

6   94.   Had adequate warnings and instructions been provided, plaintiff would not have been

7   implanted with Cook IVC Filters and would not have been at risk of the harmful injuries described

8   herein. COOK failed to provide warnings of such risks and dangers to the plaintiff and her medical

9   providers as described herein. Neither plaintiff, nor plaintiff's physicians knew, nor could they have

10   learned through the exercise of reasonable care, the risks of serious injury and/or death associated with

11   and/or caused by Cooks' IVC Filters.

12   95.   Defendants knew or had knowledge that the warnings that were given failed to properly

13   warn of the increased risks of serious injury and/or death associated with and/or caused by Cook IVC

14   Filters.

15   96.   Plaintiff, individually and through her implanting physicians, reasonably relied upon

16   the skill, superior knowledge and judgment of the Defendants.

17   97.   Defendants had a continuing duty to warn plaintiff and her physicians of the dangers

18   associated with the subject products.

19   98.   Safer alternatives were available that were effective and without risks posed by Cooks'

20   IVC Filters.

21   99. As a direct and proximate result of the Cook IVC Filters' defects, as described herein,

22   plaintiff suffered permanent and continuous injuries, pain and suffering, disability and impairment.

23   Plaintiff has suffered emotional trauma, harm and injuries that will continue into the future. Plaintiff

24   has lost her ability to live a normal life, and will continue to be so diminished into the future.

25   Furthermore, plaintiff has lost earnings and will continue to lose earnings into the future and have

26   medical bills, both past and future, related to care because of the Cook IVC Filters' defects.

27   ///

28   ///

26

**COMPLAINT**

1    100.    By reason of the foregoing, Defendants are liable to the plaintiff for damages as a result

2    of their failure to warn and/or adequately warn the plaintiff and healthcare professionals about the

3    increased risk of serious injury and death caused by their defective Cook IVC filters.

4    101.    **WHEREFORE,** plaintiff demands judgment against COOK and seeks damages set

5    forth in paragraph 36 incorporated herein by reference and exemplary damages, and punitive damages,

6    together with interest, the costs of suit and attorneys' fees, and such other and further relief as this

7    Court deems just and proper.

8    **COUNT II: STRICT PRODUCTS LIABILITY – DESIGN DEFECT**

9    102.    Plaintiff repeats and re-alleges paragraphs 45 through 101 as if set forth in full in this

10   count.

11   103.    Defendants have a duty to provide adequate warnings and instructions for their products

12   including their Cook IVC Filters, to use reasonable care to design a product that is not unreasonably

13   dangerous to users.

14   104.    At all times relevant to this action, Defendants designed, tested, manufactured,

15   packaged, labeled, marketed, distributed, promoted and sold their Cook IVC Filters, placing the

16   devices into the stream of commerce.

17   105.    At all times relevant to this action, Cook IVC Filters were designed, tested, inspected,

18   manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted,

19   sold, packaged, supplied and/or distributed by defendants in a condition that was defective and

20   unreasonably dangerous to consumers, including plaintiff.

21   106.    Cook IVC Filters are defective in their design and/or formulation in that they are not

22   reasonably fit, suitable, or safe for its intended purpose and/or its foreseeable risks exceed the benefits

23   associated with their design and formulation.

24   107.    Cook IVC Filters were expected to reach, and did reach, users and/or consumers

25   including plaintiff, without substantial change in the defective and unreasonably dangerous condition

26   in which they were manufactured and sold.

27   ///

28   ///

27

**COMPLAINT**

Exhibit A
Page 41

1    108.   Physicians implanted as instructed via the Instructions for Use and in a foreseeable

2    manner as normally intended, recommended, promoted, and marketed by the Defendants. Plaintiff

3    received and utilized a Cook IVC Filter in a foreseeable manner as normally intended recommend,

4    promoted, and marketed by the Defendants.

5    109.   Cook IVC Filters were and are unreasonably dangerous in that, as designed, they failed

6    to perform safely when used by ordinary consumers, including plaintiff, including when the filters

7    were used as intended and in a reasonably foreseeable manner.

8    110.   Cook IVC Filters were and are unreasonably dangerous and defective in design or

9    formulation for their intended use in that, when they left the hands of the manufacturers and/or

10   supplier, they posed a risk of serious vascular and other serious injury which could have been reduced

11   or avoided, inter alia, by the adoption of a feasible reasonable alternative design. There were safer

12   alternative designs for like products.

13   111.   Cook IVC Filters were insufficiently tested and caused harmful adverse events that

14   outweighed any potential utility.

15   112.   Cook IVC Filters, as manufactured and supplied, were defective due to inadequate

16   warnings, and/or inadequate clinical trials, testing, and study, and inadequate reporting regarding the

17   results of the clinical trials, testing and study.

18   113.   Cook IVC Filters, as manufactured and supplied, were defective due to no longer being

19   substantially equivalent to its predicate device with regard to safety and effectiveness.

20   114.   Cook IVC Filters, as manufactured and supplied by the Defendants, are and were

21   defective due to inadequate post-marketing warnings or instructions because, after Defendants knew or

22   should have known of the risk of injuries from use and acquired additional knowledge and information

23   confirming the defective and dangerous nature of its Cook IVC Filters, Defendants failed to provide

24   adequate warnings to the medical community and the consumers, to whom Defendants were directly

25   marketing and advertising; and further, Defendants continued to affirmatively promote their Cook IVC

26   Filters as safe and effective and as safe and effective as their predicate device.

27   ///

28   ///

**COMPLAINT**

115.   As a direct and proximate result of the Cook IVC Filters' defects, as described herein, plaintiff has suffered permanent and continuous injuries, pain and suffering, disability and impairment. Plaintiff has suffered emotional trauma, harm and injuries that will continue into the future. Plaintiff has lost her ability to live a normal life, and will continue to be so diminished into the future. Furthermore, plaintiff has lost earnings and will continue to lose earnings into the future and has medical bills both past and future related to care because of the IVC filter's defect.

116.   By reason of the foregoing, Defendants are liable to the plaintiff for damages as a result of their failure to warn and/or adequately warn the plaintiff and healthcare professionals about the increased risk of serious injury and death caused by their defective Cook IVC Filters.

117.   **WHEREFORE,** plaintiff demands judgment against COOK and seeks damages set forth in paragraph 36 incorporated herein by reference and exemplary damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## COUNT III: NEGLIGENCE

118.   Plaintiff repeats and re-alleges paragraphs 45 through 117 as if set forth in full in this count.

119.   At all times relevant to this cause of action, COOK was in the business of designing, developing, manufacturing, marketing and selling sophisticated medical devices, including its Cook IVC Filters.

120.   At all times relevant hereto, COOK was under a duty to act reasonably to design, develop, manufacture, market and sell a product that did not present a risk of harm or injury to the Plaintiff and to those people receiving their Cook IVC Filters.

121.   At the time of manufacture and sale of the Cook IVC Filters, COOK knew or reasonably should have known that the Cook IVC Filters:

(a)   were designed and manufactured in such a manner so as to present an unreasonable risk of fracture of portions of the device, as aforesaid;

(b)   were designed and manufactured so as to present an unreasonable risk of migration of the device and/or portions of the device, as aforesaid;

1          (c)    were designed and manufactured to have unreasonable and insufficient strength

2  or structural integrity to withstand normal placement within the human body; and/or

3          (d)    were designed and manufactured so as to present an unreasonable risk of

4  perforation and damage to the vena caval wall.

5      122.    Despite the aforementioned duty on the part of the Defendants, they committed one or

6  more breaches of their duty of reasonable care and were negligent in:

7          (a)    unreasonably and carelessly failing to properly warn of the dangers and risks of

8  harm associated with the Cook IVC Filters, specifically its incidents fracture, migration, perforation

9  and other failure;

10          (b)    unreasonably and carelessly manufacturing a product that was insufficient in

11  strength or structural integrity to withstand the foreseeable use of normal placement within the human

12  body;

13          (c)    unreasonably and carelessly designed a product that was insufficient in strength

14  or structural integrity to withstand the foreseeable use of normal placement within the human body;

15  and

16          (d)    unreasonably and carelessly designed a product that presented a risk of harm to

17  the plaintiff and others similarly situated in that it was prone to fail.

18      123.    As a direct and proximate result of the Cook IVC Filters' defects, as described herein,

19  plaintiff suffered permanent and continuous injuries, pain and suffering, disability and impairment.

20  Plaintiff has suffered emotional trauma, harm and injuries that will continue into the future. Plaintiff

21  has lost her ability to live a normal life, and will continue to be so diminished into the future.

22  Furthermore, plaintiff has lost earnings and will continue to lose earnings into the future and has

23  medical bills both past and future related to care because of the Cook IVC Filters' defects.

24      124.    By reason of the foregoing, Defendants are liable to the plaintiff for damages as a result

25  of their failure to warn and/or adequately warn the plaintiff and healthcare professionals about the

26  increased risk of serious injury and death caused by their defective Cook IVC filters.

27  ///

28  ///

**COMPLAINT**

Exhibit A
Page 44

1      125.   **WHEREFORE,** plaintiff demands judgment against COOK and seeks damages set

2  forth in paragraph 36 incorporated herein by reference and exemplary damages, and punitive damages,

3  together with interest, the costs of suit and attorneys' fees, and such other and further relief as this

4  Court deems just and proper.

5              **COUNT IV: NEGLIGENCE PER SE**

6      **(Violation of 21 U.S.C. §§321, 331, 352 and 21 C.F.R. §§1.21, 801, 803, 807, 820)**

7      126.   Plaintiff repeats and re-alleges paragraphs 45 through 125 as if set forth in full in this

8  count.

9      127.   At all times herein mentioned, Defendants had an obligation not to violate the law,

10  including the Federal Food, Drug and Cosmetic Act and the applicable regulations, in the manufacture,

11  design, testing, production, processing, assembling, inspection, research, promotion, advertising,

12  distribution, marketing, promotion, labeling, packaging, preparation for use, consulting, sale, warning

13  and post-sale warning and other communications of the risks and dangers of Cook IVC Filters.

14      128.   By reason of its conduct as alleged herein, Cook violated provisions of statutes and

15  regulations, including but not limited to, the following:

16         (a)   Defendants violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §§331

17  and 352, by misbranding their Cook IVC Filters;

18         (b)   Defendants violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §§

19  321 in making statements and/or representations via word, design, device or any combination thereof

20  failing to reveal material facts with respect to the consequences that may result from the use of Cook

21  IVC Filters to which the labeling and advertising relates;

22         (c)   Defendants violated the 21 C.F.R. §1.21 in misleading the consumers and

23  patients by concealing material facts in light of representations made regarding safety and efficacy of

24  their Cook IVC Filters;

25         (d)   Defendants violated the 21 C.F.R. §801 in mislabelling their Cook IVF Filters

26  as to safety and effectiveness of their products and by failing to update their label to reflect post-

27  marketing evidence that Cook IVC Filters were associated with an increased risk of injuries due to

28  tilting, fracture, migration and perforation;

(e)     Defendants violated the 21 C.F.R. §803 by not maintaining accurate medical device reports regarding adverse events of tilting, fracture, migration and perforation and/or misreporting these adverse events maintained via the medical device reporting system;

(f)     Defendants violated the 21 C.F.R. §807 by failing to notify the FDA and/or the consuming public when their Cook IVC Filters were no longer substantially equivalent with regard to safety and efficacy with regard to post-marketing adverse events and safety signals; and

(g)     Defendants violated the 21 C.F.R. §820 by failing to maintain adequate quality systems regulation including, but not limited to, instituting effective corrective and preventative actions,

129.   **WHEREFORE,** plaintiff demands judgment against COOK and seeks damages set forth in paragraph 36 incorporated herein by reference and exemplary damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## COUNT V: BREACH OF EXPRESS WARRANTY

130.   Plaintiff repeats and re-alleges paragraphs 45 through 129 as if set forth in full in this cause of action. Plaintiff, though her medical providers, purchased Cook IVC Filters from COOK.

131.   At all times relevant to this cause of action, the Defendants were merchants of goods of the kind including medical devices and vena cava filters (i.e., Cook IVC Filters).

132.   At the time and place of sale, distribution and supply of the Cook IVC Filters to plaintiff (and to other consumers and the medical community), the Defendants expressly represented and warranted in their marketing materials, both written and orally, and in the IFUs, that the Cook IVC Filters were safe, well-tolerated, efficacious, and fit for their intended purpose and were of marketable quality, that they did not produce any unwarned of dangerous side effects, and that they were adequately tested.

133.   At the time plaintiff purchased from Defendants, the Cook IVC Filter was not in a merchantable condition and defendants breached their express warranties, in that the filters:

(a)     were designed in such a manner so as to be prone to a unreasonably high incident of fracture, perforation of vessels and organs, and/or migration;

1        (b)    were designed in such a manner so as to result in an unreasonably high incident

2 of injury to the organs of its purchaser; and

3        (c)    were manufactured in such a manner so that the exterior surface of the Cook

4 IVC Filters were inadequately, improperly and inappropriately designed causing the device to weaken

5 and fail.

6     134.   As a direct and proximate result of the Cook IVC Filters' defects, as described herein,

7 plaintiff has suffered permanent and continuous injuries, pain and suffering, disability, and

8 impairment. Plaintiff has suffered emotional trauma, harm, and injuries that will continue into the

9 future. Plaintiff has lost her ability to live a normal life and will continue to be so diminished into the

10 future. Furthermore, plaintiff has lost earnings and will continue to lose earnings into the future and

11 have medical bills both past and future related to care because of the Cook IVC Filters' defect.

12     135.   By reason of the foregoing, Defendants are liable to the plaintiff for damages as a result

13 of their breach express warranty.

14     136.   **WHEREFORE,** plaintiff demands judgment against COOK and seeks damages set

15 forth in paragraph 36 incorporated herein by reference and exemplary damages, and punitive damages,

16 together with interest, the costs of suit and attorneys' fees, and such other and further relief as this

17 Court deems just and proper.

18              **COUNT VI: BREACH OF IMPLIED WARRANTY**

19     137.   Plaintiff repeats and re-alleges paragraphs 45 through 136 as if set forth in full in this

20 count.

21     138.   At all relevant and material times, Defendants manufactured, distributed, advertised,

22 promoted, and sold its Cook IVC Filters.

23     139.   At all relevant times, the Defendants intended its Cook IVC Filters be used in the

24 manner that plaintiff in fact used it.

25     140.   Defendants impliedly warranted their Cook IVC Filters to be of merchantable quality,

26 safe and fit for the use for which the Defendants intended them and for which plaintiff in fact used it.

27     141.   Defendants breached their implied warranties as follows:

28 /// 

**COMPLAINT**

1        (a)    Defendants failed to provide the warning or instruction and/or an adequate

2  warning or instruction which a manufacturer exercising reasonable care would have provided

3  concerning that risk, in light of the likelihood that their Cook IVC Filters would cause harm;

4        (b)    Defendants manufactured and/or sold their Cook IVC Filters and said filters did

5  not conform to representations made by the Defendants when they left the Defendants' control;

6        (c)    Defendants manufactured and/or sold their Cook IVC Filters which were more

7  dangerous than an ordinary consumer would expect when used in an intended or reasonably

8  foreseeable manner, and the foreseeable risks associated with the Cook IVC Filters' design or

9  formulation exceeded the benefits associated with that design. These defects existed at the time the

10  products left the Defendants' control; and

11        (d)    Defendants manufactured and/or sold their Cook IVC Filters when they

12  deviated in a material way from the design specifications, formulas or performance standards or from

13  otherwise identical units manufactured to the same design specifications, formulas, or performance

14  standards, and these defects existed at the time the products left the Defendants' control.

15     142.    Further, Defendants' marketing of their Cook IVC Filters was false and/or misleading.

16     143.    Plaintiff, through her attending physicians, relied on these representations in

17  determining which IVC filter to use for implantation in the plaintiff.

18     144.    Defendants' Cook IVC Filters were unfit and unsafe for use by users as they posed an

19  unreasonable and extreme risk of injury to persons using said products, and accordingly Defendants

20  breached their express warranties and the implied warranties associated with the product.

21     145.    The foregoing warranty breaches were a substantial factor in causing plaintiff's injuries

22  and damages as alleged.

23     146.    As a direct and proximate result of the Cook IVC Filters' defects, as described herein,

24  plaintiff has suffered permanent and continuous injuries, pain and suffering, disability and impairment.

25  Plaintiff has suffered emotional trauma, harm and injuries that will continue into the future. Plaintiff

26  has lost her ability to live a normal life and will continue to be so diminished into the future.

27  Furthermore, plaintiff has lost earnings and will continue to lose earnings into the future and has

28  medical bills both past and future related to care because of the Cook IVC Filters' defects.

1    147.   By reason of the foregoing, Defendants are liable to the plaintiff for damages as a result

2    of their breaches of implied warranty.

3    148.   **WHEREFORE,** plaintiff demands judgment against COOK and seeks damages set

4    forth in paragraph 36 incorporated herein by reference and exemplary damages, and punitive damages,

5    together with interest, the costs of suit and attorneys' fees, and such other and further relief as this

6    Court deems just and proper.

7    **COUNT VII: VIOLATIONS OF APPLICABLE STATE LAW PROHIBITING**

8    **CONSUMER FRAUD AND UNFAIR AND DECEPTIVE TRADE PRACTICES**

9    149.   Plaintiff repeats and re-alleges paragraphs 45 through 148 as if set forth in full in this

10   count.

11   150.   Defendants had a statutory duty to refrain from unfair or deceptive acts or practices in

12   the sale and promotion of Cook's IVC Filters to plaintiff.

13   151.   Defendants engaged in unfair, unconscionable, deceptive, fraudulent and misleading

14   acts or practices in violation of California consumer protection laws, identified below.

15   152.   COOK through its false, untrue and misleading promotion of Cook's IVC Filters

16   induced plaintiff or her medical providers to purchase and/or pay for the purchase of Cook's IVC

17   Filter.

18   153.   Defendants misrepresented the alleged benefits and characteristics of Cook's IVC

19   Filters; suppressed, omitted, concealed, and failed to disclose material information concerning known

20   adverse effects of Cook's IVC Filters; misrepresented the quality and efficacy of Cook's IVC Filters as

21   compared to much lower-cost alternatives; misrepresented and advertised that Cook's IVC Filters were

22   of a particular standard, quality, or grade that they were not; misrepresented Cook's IVC Filters in

23   such a manner that later, on disclosure of the true facts, there was a likelihood that plaintiff would have

24   opted for an alternative IVC Filter or method of preventing pulmonary emboli.

25   ///

26   ///

27   ///

28   ///

**COMPLAINT**

154. Defendants' conduct created a likelihood of, and in fact caused, confusion and misunderstanding. Defendants' conduct misled, deceived, and damaged plaintiff, and Defendants' fraudulent, misleading, and deceptive conduct was perpetrated with an intent that plaintiff rely on said conduct by purchasing and/or paying for purchases of Cook IVC Filters. Moreover, Defendants knowingly took advantage of plaintiff, who was reasonably unable to protect her interests due to ignorance of the harmful adverse effects of Cook IVC Filters.

155. Defendants' conduct was willful, outrageous, immoral, unethical, oppressive, unscrupulous, unconscionable, and substantially injurious to plaintiff and offends the public conscience.

156. Plaintiff purchased Cook IVC Filter primarily for personal, family, or household purposes.

157. As a result of Defendants' violative conduct in California, plaintiff purchased and/or paid for purchases of Cook IVC Filters that were not made for resale.

158. Defendants engaged in unfair competition or deceptive acts or practices in violation of Cal. Civ. Code § 1770, *et seq.* (the "Consumer Legal Remedies Act"), and Cal. Bus. & Prof. Code § 17200 *et seq.* and § 17500 *et seq.*

159. **WHEREFORE,** plaintiff demands judgment against COOK and seeks damages set forth in paragraph 36 incorporated herein by reference and exemplary damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## COUNT XI: PUNITIVE DAMAGES

160. Plaintiff repeats and re-alleges paragraph 45 through 159 as if set forth in full in this count.

161. At all times material hereto, Defendants knew or should have known that their Cook IVC Filters were inherently dangerous with respect to the risk of tilt, fracture, migration and/or perforation.

162. At all times material hereto, Defendants attempted to misrepresent and did knowingly misrepresent facts concerning the safety of their Cook IVC Filters.

163.   Defendants' misrepresentations included knowingly withholding material information from the medical community and the public, including plaintiff's physicians, concerning the safety of their Cook IVC Filters. The defendants' conduct was willful, wanton, and undertaken with a conscious indifference to the consequences that consumers of their product faced, including plaintiff.

164.   At all times material hereto, Defendants knew and recklessly disregarded the fact that their Cook IVC Filters have an unreasonably high rate of tilt, fracture, migration and/or perforation.

165.   Notwithstanding the foregoing, Defendants continued to market their Cook IVC Filters aggressively to consumers, including plaintiff, without disclosing the aforesaid side effects.

166.   Defendants knew of their Cook IVC Filters' lack of warnings regarding the risk of fracture, migration, and/or perforation, but intentionally concealed and/or recklessly failed to disclose that risk and continued to market, distribute, and sell their Filters without said warnings so as to maximize sales and profits at the expense of the health and safety of the public, including plaintiff, in conscious disregard of the foreseeable harm caused by Cook IVC Filters.

167.   Defendants' intentional and/or reckless failure to disclose information deprived plaintiff's physicians of necessary information to enable them to weigh the true risks of using Cook IVC Filters against their benefits.

168.   As a direct and proximate result of Defendants' willful, wanton, careless, reckless, conscious, and deliberate disregard for the safety and rights of consumers including plaintiff, she has suffered and will continue to suffer severe and permanent physical and emotional injuries, as described with particularity above. Plaintiff has endured and will continue to endure pain, suffering, and loss of enjoyment of life, and has suffered and will continue to suffer economic loss, including incurring significant expenses for medical care and treatment and lost wages.

169.   Defendants' aforesaid conduct was committed with knowing, conscious, careless, reckless, willful, wanton, and deliberate disregard for the safety and rights of consumers including plaintiff, thereby entitling plaintiff to punitive damages in an amount appropriate to punish Defendants and deter them from similar conduct in the future.

/ / /

/ / /

**Exhibit A
Page 51**

## TOLLING OF THE LIMITATIONS PERIOD

170.   Defendants, through their affirmative misrepresentations and omissions, actively concealed from plaintiff and plaintiff's healthcare providers the true and significant risks associated with Cook IVC Filters.

171.   As a result of Defendants' actions, plaintiff and her prescribing physicians were unaware, and could not have reasonably known or have learned through reasonable diligence, that plaintiff had been exposed to the risks identified in this Complaint, and that those risks were the result of Defendants' acts, omissions, and misrepresentations.

172.   Accordingly, no limitations period ought to accrue until such time as plaintiff knew or reasonably should have known of some causal connection between plaintiff being implanted with a Cook IVC Filter and the harm plaintiff suffered as a result.

173.   Additionally, the accrual and running of any applicable statute of limitations have been tolled by reason of Defendants' fraudulent concealment.

174.   Additionally, Defendants are equitably estopped from asserting any limitations defense by virtue of their fraudulent concealment and other misconduct as described.

175.   Additionally, the limitations period ought to be tolled under principles of equitable tolling.

WHEREFORE, plaintiff prays for damages against all defendants on all Causes of Action as follows:

1.   For noneconomic damages in a sum according to proof at trial;

2.   For reimbursement of plaintiff's past and future medical, hospital, nursing, attendant, medical monitoring and imaging of her Cook IVC Filter, and other related expenses in a sum according to proof at trial;

3.   For reimbursement of plaintiff's past and future loss of time and income in a sum according to proof at trial;

/ / /

/ / /

38

**COMPLAINT**

1      4.      For costs of suit incurred herein;

2      5.      For prejudgment interest pursuant to CCP §998 and Civil Code §3291 according

3  to proof at trial; and

4      6.      For such other relief as the court deems just and proper.

5

6      WHEREFORE, plaintiff prays for additional damages against COOK as follows:

7      1.      For exemplary and punitive damages in an amount sufficient to punish COOK

8  and set an example; and

9      2.      For reasonable attorney fees.

10

11  Dated: June 9, 2017                        EASTON & EASTON, LLP

12

13                                      By:

14                                             W. DOUGLAS EASTON
                                               Attorneys for Plaintiff,
15                                             CHRISTINE KAY

16

17

18

19

20

21

22

23

24

25

26

27

28